# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

ROBIN D. PERKINS, )
 )
      Plaintiff, )
 )
v. ) Case No. CIV-07-337-JHP-SPS
 )
MICHAEL J. ASTRUE, )
Commissioner of the Social )
Security Administration, )
 )
      Defendant. )

## REPORT AND RECOMMENDATION

The claimant Robin D. Perkins requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on September 30, 1966, and was forty years old at the most recent administrative hearing. She has a GED plus an associate's degree as a paralegal and in geriatric nursing and previously worked as a book binder and meat wrapper. The claimant alleges she has been disabled since May 13, 2003, because of plantar fasciitis, degenerative disc disease of the lumbar spine and depression.

## Procedural History

On May 25, 2004, the claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. ALJ Lantz McClain conducted a hearing and found the claimant was not disabled on May 24, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work, *i. e.*,

that she could lift and/or carry ten pounds frequently and occasionally; stand and/or walk for at least two hours total during an eight-hour workday with normal breaks; and sit for at least six hours total during an eight-hour workday with normal breaks. The claimant was further limited to only "perform simple, repetitive tasks and have incidental contact with the public." (Tr. 19). The ALJ concluded that the claimant was not disabled because there was work she could perform existing in significant numbers in the regional and national economies, *e. g.*, laborer, assembler and sorter (Tr. 26).

## Review

The claimant contends that the ALJ erred: (i) by improperly documenting the file with regard to her condition; (ii) by failing to recognize all of her impairments as severe; (iii) by failing to include all her limitations in the RFC; and, (iv) by improperly analyzing her credibility. As part of her third contention, the claimant argues the ALJ failed to explain why he preferred the opinion of non-examining psychologist and medical expert Dr. John Hickman, Ph.D., over that of the examining psychologist Dr. Donna Noland, Ph.D. The undersigned Magistrate Judge finds the claimant's argument persuasive.

The record reveals that the claimant underwent a mental status examination in September 2004 with Dr. Noland. The claimant reported missing several days of work because of severe depression and that she had received mental health treatment at Green Country Mental Health. The claimant was cooperative during the examination, thoughts were organized, logical, and goal directed, and her thought control was appropriate.

-4-

Symptoms of depression included problems sleeping, lack of energy, weight gain, thoughts of death, feelings of helplessness and hopelessness, depression most days, low self-esteem, loss of interest in activities, and impaired social relationships. Dr. Noland noted the manic symptom of pressured speech. The claimant's immediate recall of information was average, long-term memory was adequate, and her ability to concentrate and do simple calculations was average. She was unable to "give abstract interpretations to common proverbs" and "[h]er capacity for associative thinking and verbal concept formation [was] low average." Dr. Noland assessed the claimant with major depression (severe, recurrent), problems with access to health care services, educational problems, occupational problems, economic problems, and a Global Assessment of Functioning ("GAF") score of 44. She concluded that "[the claimant would] have difficulty functioning in most work settings at the present time due to symptoms of depression such as low energy, severe sleep problems, and emotional lability [and,] [h]er ability to handle the stress of a work setting and deal with coworkers and supervisors [was] below average." (Tr. 207-14).

In June 2006, the ALJ sent Dr. Hickman copies of all the claimant's mental health records. He included several interrogatories for Dr. Hickman to answer in addition to RFC assessments for him to complete (Tr. 146-49). Dr. Hickman determined the claimant did not meet a listing and concluded that her perception of her disability was magnified by her depression and probable personality disorder. He believed that with her physical and mental limitations, the claimant was capable of performing sedentary work. Dr. Hickman indicated

his opinion on the claimant's mental condition was most strongly supported by Dr. Noland's mental status examination. He did not believe the claimant was compliant with mental health treatment and noted that the prescription of benzodiazepines had probably contributed to the claimant's "mood instability" to a mild to moderate degree. (Tr. 326-27). He completed a mental RFC assessment wherein he found the claimant moderately limited in the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; and the ability to get along with co-workers or peers without being distracting. However, Dr. Hickman remarked that there was "insufficient data to answer these questions accurately or reliability [*sic*]. Her mental status exam suggested average intelligence and memory functions but that is insufficient to answer the questions in a reliable or detailed manner." (Tr. 328-31). He also testified at the administrative hearing that he answered the RFC assessment based on the areas where he thought "there was enough data to support [his] answers." (Tr. 456). When questioned about the low GAF score, Dr. Hickman testified the problem with the score "[was] that different people [were] focusing on different things." He estimated that based on her testimony at the hearing, the claimant's GAF score "would be in the 60's with a [*sic*] moderate symptoms." (Tr. 457). With respect to Dr. Noland's finding that the claimant lacked the ability to handle work stress and deal with co-workers and supervisors, Dr. Hickman testified he could not agree or disagree "because there [was] no facts to substantiate [the finding]." (Tr. 458).

The ALJ summarized the medical records, including the mental status examination conducted by Dr. Noland and the interrogatories and testimony provided by Dr. Hickman (Tr. 22). However, the ALJ failed to specifically mention some of Dr. Noland's findings or to explain why he rejected them, *i. e.*, that the claimant would have difficulty functioning in a work setting because of her depression and that her ability to handle the stress of a work setting and deal with coworkers and supervisors was below average. The ALJ should have discussed the evidence supporting his decision and explained his rejection of the evidence that did not. *See*, *e. g.*, *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring . . . evidence.").

Further, the ALJ appears to have given more weight to the testimony of Dr. Hickman than to the opinions of Dr. Noland without any explanation. To the extent the ALJ favored the opinion of Dr. Hickman, he should have explained why he preferred the opinion of a non-examining medical expert and psychologist over that of an examining psychologist. *See*, *e.g.*, *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least

weight of all."), *citing* 20 C.F.R. §§ 404.1527(d)(1), (2), 416.927(1), (2) and Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2. *See also Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987) ("[R]eports of *reviewing* physicians are . . . accorded less weight than those of *examining* physicians.") [citations omitted] [emphasis in original].

Because the ALJ failed to discuss probative evidence inconsistent with his RFC determination, the undersigned Magistrate Judge cannot determine the extent to which it was actually considered. *See, e. g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991). *See also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further consideration of the opinions of Dr. Noland and Dr. Hickman. If on remand there is any adjustment to the claimant's RFC, the ALJ should redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the

Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Any objections to this Report and Recommendation must be filed within ten days.

**DATED** this 26th day of February, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**